JAMES HANNA, PLAINTIFF IN ERROR, v. THE NEW JERSEY
   SOCIETY FOR THE PREVENTION OF CRUELTY TO ANI-
   MALS, DEFENDANT IN ERROR.

Submitted March 27, 1899—Decided June 19, 1899.

In taking possession and disposing of property seized for violation of "An act for the prevention of cruelty to animals," persons designated in that act as "agents of the New Jersey Society for the Prevention of Cruelty to Animals," do not proceed as representatives of the society, and the society is not responsible for their conduct, in the absence of any actual directions or interference by the society.

On error.

For the plaintiff in error, *James R. Bowen.*

For the defendant in error, *James D. Manning.*

The opinion of the court was delivered by

DIXON, J.   This action was brought in the Hudson Circuit to recover damages for the destruction of a bull terrier belonging to the plaintiff.   On the trial it appeared that shortly after midnight on January 7th, 1897, the dog was fighting with another dog in a stable in Jersey City in the presence of the plaintiff and several other men; that the dog was then seized by a person who was an " agent" of the " New Jersey Society for the Prevention of Cruelty to Animals," and that on February 19th, 1897, this person told the plaintiff that on the day previous he had sent the dog over to the death chamber in New York to be killed.   On this state of the evidence a nonsuit was ordered, and an exception thereto being sealed for the plaintiff, error is assigned thereon.

We think the nonsuit was right.

Under "An act to incorporate the New Jersey Society for the Prevention of Cruelty to Animals," approved April 3d, 1868, and its supplements (*Gen. Stat.*, p. 32), there exist, not only the original association, but also subordinate district societies organized in various counties of the state; but in all legal proceedings the title of each of these societies is that of the original association.   These statutes do not confer either upon the societies or their agents any special powers or duties with regard to the prevention of cruelty, but merely declare the purpose of their organization to be " the enforcement of all laws which are now or may hereafter be enacted for the protection of dumb animals."

The specific duties and powers created by law for the protection of dumb animals, so far as now pertinent, are to be found in "An act for the prevention of cruelty to animals," approved March 11th, 1880, and its supplements.   *Gen. Stat.*, p. 34.   Section 11 of this act provides "that any sheriff, under-sheriff, constable, police officer or agent of the New Jersey Society for the Prevention of Cruelty to Animals may enter any place, building or tenement where there is an exhibition of the fighting or baiting of any bull, bear, dog, cock, bird or other living animal or creature,   *   *   *   and take

possession of all bulls, bears, dogs, cocks, birds or other living animals or creatures engaged in fighting;" and section 6, as amended by the supplement of March 23d, 1883, provides "that the person  *  *  *  so seizing such living animals  *  *  *  shall, within twenty-four hours after such seizure, make application to a justice of the peace, district court or police magistrate, to have the same forfeited and sold;  *  *  *  and if, upon the hearing of such application, it shall be found and adjudged that at the time of said seizure the same were engaged or used in violation of said section 11,  *  *  *  they shall be adjudged forfeited, and the said justice, court or magistrate shall order the same sold in such manner as he shall deem proper, and after deducting the costs and expenses, shall pay one-half the proceeds of such sale to the district society for the prevention of cruelty to animals, if one is in existence in his county, and, if not, then to the New Jersey Society for the Prevention of Cruelty to Animals, and the other half to the person making the seizure aforesaid; but should the creature  *  *  *  so seized be adjudged not forfeited, the same shall be returned to the owner, and the party making the seizure shall pay all the costs and expenses of the same."

These enactments make it clear that in the proceedings contemplated the society is not an actor. While through its instrumentality certain persons are designated as "agents," just as through other instrumentalities other persons are designated as sheriffs, under-sheriffs, constables or police officers, yet, when these persons make seizures of property for supposed violation of law, they do so, not because they are empowered or ordered to do so by the instrumentality which selected them, but because of the duty enjoined upon them personally and directly by the legislature. The officer, acting on his own responsibility and in his own behalf, not as the representative of his constituent, is authorized to take possession of the property, is directed to make application for its forfeiture, and, if he fails in such application, is charged with the costs and expenses. Only after forfeiture has been ad-

judged and the forfeited property has been sold, does the society become legally concerned in the matter; then it is entitled to one-half of the net proceeds of sale, and that equally, whether the seizure had been made by a person designated as its agent, or by a sheriff or other officer.

At no stage of the transaction is there anything on which to found a presumption or inference that the legislature meant to charge the society with any responsibility for the possession or disposition of the property seized, or for the proceedings instituted to that end.

It was therefore incumbent on the plaintiff in this case to show as a fact that the society itself had wrongfully interfered with his property. The declaration of an individual, who happened to be an agent or officer of the society, as to what he personally had done with the plaintiff's property, had no legitimate tendency to establish that fact. Hence we conclude that there was no evidence to support the plaintiff's claim against the defendant.

The remaining thirty-nine assignments of error relate to the admission of testimony, and have been filed in utter disregard of the exceptions sealed. They present no question justifying discussion.

The judgment of nonsuit should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH.   14.

*For reversal*—None.