# Prudential Insurance Co. of America v. Dismore.

(Decided June 6, 1934.)

WHEELER, WHEELER & SHELBOURNE for appellant.
WELLS & WELLS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

George E. Dismore, a resident of Livingston county, Ky., on the 23d day of April, 1931, was issued and delivered by the Prudential Insurance Company of America, for a paid annual premium of $299.53, a policy of insurance, insuring his life, containing a monthly income provision by which it agreed to pay him $10 per month for each $1,000 of the fact amount ($7,000.00) of insurance "in the event of total and permanent disability before the anniversary date of this policy nearest the sixtieth birthday of the insured, subject to the provisions of the total and permanent disability clause contained in the policy."

At the expiration of the first year after the issuance of the policy, he paid the maturing quarterly premium. Thereafter, in May, 1932, and before the next quarterly premium became due, he claims he became totally and permanently disabled from disease, examined and treated therefor by physicians. Also he claims he notified the Prudential Insurance Company of his disabled condition. Dr. A. J. Driskill wrote the insurance company, and L. E. McDonald wrote a letter or two to it for him. The insurance company failed to pay the $10 per month for the $1,000 of the face value of the policy, or the $70 a month, and, his disability continuing, on December 5, 1932, he filed an action in the Livingston quarterly court to recover of it $70, wherein he alleged that he became totally and permanently disabled on June 4, 1932, and had continued so to be. He

sought a recovery of the $70 "under the terms of the policy, July 4th, 1932, barring months for which no pay is due; that he gave written notice of such disability to the insurance company as provided and required in said policy contract; that he furnished the company with due proof of his total and permanent disability as provided for in said disability contract and on the company's forms and as required of him; that after doing so he demanded that the company pay him the disability benefits due him and the company refused."

In his petition he copies a portion of the policy, beginning with the language, "Provisions as to total and Permanent disability before age 60: Waiver of Premiums, Monthly income to the Insured," followed by an excerpt from the policy, including the title, "Disability Benefits, Waiver of Premium— Monthly Income to the Insured." "The Company will in addition to waiving premiums pay to the insured the monthly income specified on the first page hereof under the heading: 'Total and Permanent Disability Benefits' during the continuance of such total disability beginning at the end of four months from the commencement of such total disability provided that no such monthly income shall be paid for any part of the first three months of such total disability or for any fractional part of a month thereafter and in no event for any period more than one year prior to the receipt by the company of said notice of disability. * * * Such waiver of premiums and such monthly payments shall be additional to all other benefits and obligations under this policy and the policy shall be continued in force and the amount of insurance less any indebtedness shall become due and payable at death or maturity as an endowment shall also become payable in the same manner as if the insured had continued to pay the premiums."

The allegations of his petition were traversed by an answer. On a trial in the quarterly court in May, 1933, Dismore won, and a judgment was rendered accordingly. The insurance company appealed to the Livingston circuit court. In the latter court, by leave of court, on September 14, 1933, he amended his petition, wherein it is alleged:

"There is due him from the defendant, in addition to the sum and amounts sued for in the original petition, the sum of $770.00, making a total due him

to September 4th, 1933 of $840.00, this being $70.00 per month from the 4th day of September 1932 until September 4th, 1933," for which he prayed judgment.

By an agreement, the amended petition was controverted of record. On a trial before a jury, on its verdict, a judgment was entered for him of $840.

For a reversal, the insurance company argues the evidence is insufficient to show Dismore was totally and permanently disabled, the admission of incompetent evidence as to the notice and furnishing the proof to the company of his disability, and errors in the instructions to the jury.

The basis of the action, the policy of insurance, is not in the record. It was not introduced as evidence as a part of the testimony of any witness nor as an exhibit. Only so much of it as copied in the petition is contained in the record. There is no showing that even this portion of the policy was read as evidence. The excerpts from the policy hereinbefore set forth plainly show that the pleader copied in the petition only those provisions entitled "Waiver of premiums, Monthly income to the Insured; Disability Benefits, Waiver of Premium; The company will pay monthly income to the insured." The clauses of the policy copied in the petition relate to the giving of notice by the insured of his disability and the furnishing of proof of disability to the company under the title indicated above.

Dismore alleged and proved, and his testimony is not contradicted, that he had kept the premium paid. He made no allegations and offered no evidence, bringing his cause of action within the disability clause under the provisions of the policy, entitled, "Waiver of premium."

The allegations of the petition do not relieve the insurance company of its imperative duty to set up and rely upon the clause or provision of its policy, and the required facts necessary to bring its defense, if any, within the requirements of the policy imposing as a condition precedent upon the insured the duty to give notice of the commencement of his disability and the furnishing the proof thereof, within a definite period, or that his disability shall continue for four months or any period, before the monthly disability payments shall

become due or payable. The surplus matter in the petition did not relieve it of its duty to plead and prove such provisions of the policy and the facts bringing its defense thereunder. Colker v. Connecticut Fire Ins. Co., 224 Ky. 837, 7 S. W. (2d) 502; New York Underwriters' Ins. Co. v. Mullins, 244 Ky. 788, 52 S. W. (2d) 697. Such a clause or provision in an insurance contract is binding and enforceable where it is made a condition precedent to give notice or to furnish proof of his disability before suing for a recovery, unless waived by the insured. Maryland Casualty Co. v. Burns, 149 Ky. 550, 149 S. W. 867; Colker v. Connecticutt Fire Ins. Co. and New York Underwriters' Insurance Co. v. Mullins, supra.

We have often held that, where the policy provides that either the giving of notice or the furnishing of proof of disability, or both, are a condition precedent to the insured's right to institute an action or to recover on the policy, such provision is controlling, unless waived by the insurer. Home Ins. Co. of N. Y. v. Roll, 187 Ky. 31, 218 S. W. 471; Standiford v. American Ins. Co., 208 Ky. 731, 271 S. W. 1042; Niagara Fire Ins. Co. v. Layne, 162 Ky. 665, 172 S. W. 1090; Fidelity Phœnix Ins. Co. v. Vincent, 224 Ky. 769, 7 S. W. (2d) 203; Homes Ins. Co. of N. Y. v. Johnson, 226 Ky. 594, 11 S. W. (2d) 415; Svea F. & L. Ins. Co. v. Foxwell, 234 Ky. 95, 27 S. W. (2d) 675; Royal Ins. Co. v. Santamoro, 246 Ky. 787, 56 S. W. (2d) 359. The assured is not required, however, to comply with technical strictness with a provision relating to either the time of giving the notice or the making of proof of his disability before his right of action accrues or before he is entitled to recover. Northwestern Ins. Co. v. Atkins, 3 Bush, 328, 96 Am. Dec. 239; Dwelling-House Ins. Co. v. Freeman, 12 Ky. Law Rep. 894. Of course, where the insurer denies all liability, proof of disability is not necessary to the maintenance of an action on a policy. Shawnee Fire Ins. Co. v. Roll, 145 Ky. 113, 140 S. W. 49.

Dismore was required to allege only facts constituting a prima facie cause of action, but he was not required to anticipate affirmative defenses. Depp v. L. & N. R. R. Co., 14 S. W. 363, 12 Ky. Law Rep. 366; Flynn v. Barnes, 156 Ky. 498, 161 S. W. 523; Goff v. National Rubber & Leather Co., 249 Ky. 363, 60 S. W. (2d) 944. Anticipatory matter pleaded by a plaintiff will be treated as surplusage. New York Life Ins. Co. v. Dean et al., 226 Ky. 597, 11 S. W. (2d) 417.

730

In the absence of the policy containing a clause requiring Dismore to fulfill a condition precedent in respect to the notice or furnishing the company proof of his disability and the portion of the policy copied in his petition not showing the duty to give notice or furnish proof of disability was by a clause or provision of the policy a condition precedent to his right to sue for, or recover, the monthly disability payments, the allegations of the petition in this respect must be treated as surplusage and regarded as giving no more effect than if they had been entirely omitted from the pleading. Philadelphia Life Ins. Co. v. Farnsley, 162 Ky. 27, 171 S. W. 1004; Anderson v. Granville Coal Co., 205 Ky. 111, 265 S. W. 472; Home Ins. Co. of N. Y. v. Johnson, supra; N. Y. Life Ins. Co. v. Dean et al., supra. Where anticipatory matter is set up in a pleading by the plaintiff, which the law regards as mere surplusage, it is the accepted rule to treat the same as of no more effect than if it had been entirely omitted. The burden in a case like this one, notwithstanding the surplusage of the petition, rests upon the insurer to plead and prove the provisions of its policy upon which it relies as constituting a condition precedent. N. Y. Life Ins. Co. v. Dean et al., and authorities cited, supra. The insurance company argues that the evidence offered as to the giving of notice is insufficient and there is no evidence as to the furnishing of proof of his disability.

The testimony of Dismore is unequivocal that notice of the existence of his disability was given by Dr. Driskill and others to the insurance company. It is uncontradicted, and, being so, he was entitled to a peremptory instruction as to the giving of the notice of his disability. The allegation of his petition concerning the furnishing of the proof of disability being mere surplusage, the giving of the instruction in relation thereto, even though no proof was offered to sustain it, was not prejudicial to the insured. The giving of the instruction in the circumstances was a harmless error, especially in the absence of an allegation of the insurance company that the furnishing of the proof showing his disability, the date of its commencement, its extent and nature, and its continuance for four months or any other period next before the commencement of the action, was required by the policy as a condition precedent to a suit or to a recovery. Also it is insisted "the court erred in instructing the jury that total dis-

ability was such disability that would bring upon the plaintiff his inability to do substantially or practically all material acts in the transaction of the plaintiff's business as a farmer in his customary and usual manner.''

The principal of this instruction has often been approved by this court. See Equitable Life Assur. Soc. of U. S. v. Branham, 250 Ky. 472, 63 S. W. (2d) 498 and cases cited. The instruction is criticized because it contains the words "his inability." It is argued that they "presume or pre-suppose the existence of a disability, a question which was and is seriously combated." We are not convinced that their mere use in the instruction was improper, but, if so, their use was a harmless, not a prejudicial, error. The instruction is further criticized because it did not present the theory that the monthly benefits were only payable "during the continuance of such total disability, beginning at the end of four months from the commencement of such total disability, provided that no such monthly income shall be paid for in bar of the first three months for such disability or for any fractional part of a month thereafter."

To sustain this insistence it is argued that the insurer was entitled to this instruction because it denied "all the material averments of the petition except the quoted paragraphs of the policy sued on, and denying that the plaintiff was disabled, and denying liability."

As we have already stated, the prevailing rule of pleading in such case requires the insurer to allege and prove some clause or provision of the policy entitling it to the defense now urged. Such affirmative defense was not authorized by a mere traverse of the surplusage allegations of the petition, which in themselves do not show the existence of a clause in the policy to the effect the monthly payments are only to be made "during the continuance of such total disability beginning at the end of four months from the commencement of such total disability and that in no event shall the monthly payments be made until expiration of the first three months or a fraction thereof after its commencement."

So far as this record discloses, no notice or proof of disability was required to be given to the company within any specified time as a condition precedent to a right to sue or entitle Dismore to a recovery. In the absence of the policy, we are not authorized to assume

that it required the giving of the notice, or the furnishing the proof of disability, within any specified time, as a condition precedent to an institution of the action or to entitle him to a recovery, nor to presume that the time of the giving of notice or proof of disability was the essence of the contract. It is fairly well established that the insurance company denied all liability to Dismore immediately following its receiving knowledge of its claim of disability.

Dismore testified that he became disabled in May, 1932; on the day of its commencement he worked all day, and that at night when "he sat down to eat his supper" "all at once" he fell over; he did not know how it happened; did not know anything for a long time; hurt in his left side; "lost the use of" his arm and hand; he engaged the services of Dr. Driskill; went to see several doctors; Dr. Smith examined and treated him three or four times; he was examined by phyiscians of the insurance company; he has not been able to do any manual labor since May, 1932. He was 54 years old at the time he testified. Dr. Willingham examined him in January, 1933. He diagnosed the disease "apoplexy with residual signs of loss of motion of left leg and arm; slight drooping of the side of his face, and eyelids a little drooped; that produced hemiplegia or partial paralysis of the left arm and leg and an enlarged heart." Dr. Willingham stated Dismore "had all the signs" of a "stroke" and also "a degree of myocarditis with anginal symptoms," and, according to Dr. Willingham, Dismore was totally and permanently disabled. Dr. Driskill examined Dismore at his office in the spring of 1932. He found "a stenosis in the brain or stoppage of the circulation of the blood in the brain or the rupture of a blood vessel." It was his opinion that Dismore was totally and permanently disabled. A number of Dismore's neighbors narrated their observations of his physical condition which corroborated the testimony of Dismore and Drs. Driskill and Willingham. Dr. Sights, at the request of the Prudential Insurance Company, examined Dismore in April, 1933, consuming about four hours in making the examination. Dr. Dunn, at the request of the insurance company, in October, 1932, went to the home of Dismore and made "a regular, physical examination." Drs. Sights and Dunn diagnosed Dismore's health "quite good," able to do manual labor. A few of Dismore's neighbors de-

tailed their observations of Dismore, which corroborated Drs. Sights and Dunn.

The evidence of Dismore and his witnesses and that of the witnesses of the insurance company was sufficient to sustain a verdict in favor of either. With it thus conflicting, and the credibility of the witnesses and the weight to be given their testimony being exclusively for the jury, it cannot be said that its verdict was palpably against the weight of the evidence. We pause to remark that Dismore's testimony to the effect he gave notice of his disability to the insurance company is corroborated by that of Dr. Dunn, showing that he examined Dismore on the 17th day of October, 1932, which indicates the insurance company had knowledge of Dismore's claim of disability prior to Dr. Dunn's examination. The action was filed in the quarterly court the 5th day of December, 1932, or one month and eighteen days after Dr. Dunn's examination. The trial in the quarterly court occurred and judgment was rendered the 25th day of May, 1933. The appeal to the circuit court was completed July 21, 1933. Dismore's petition was amended on September 14, 1933, in the circuit court, increasing the amount sought to be recovered, $770.

The examination of Dismore by Dr. Dunn on the 17th day of October, 1932, and the dates of the steps taken in this action, indicate a reason for the absence of an affirmative defense predicated on a clause or provision of the policy containing the requirement of the giving notice of the date of Dismore's disability and of the furnishing of the proof of loss as a condition precedent to his right to sue or to recover.

Perceiving no error prejudicial to the rights of the insurance company, the judgment is affirmed.